# Birmingham Railway, Light & Power Co. v. Pratt & McCurdy.

## Damages for Failure to Furnish Lights.

(Decided January 20, 1914. Rehearing denied February 5, 1914. 64 South. 510.)

1. *Appeal and Error; Waiver.*—Where assignments of error are not supported by arguments or citation of authority, they will be deemed waived and not considered on appeal.

2. *Gas; Duty to Furnish.*—A public service corporation whose business it is to supply gas to the inhabitants of a municipality, is under no duty to supply a customer with gas who is not ready and willing to pay for same; hence, a complaint seeking damages for a failure to supply such gas is defective in the absence of an averment that the plaintiff customer was ready and willing to pay for same.

3. *Same; Replication.*—As the office of a replication is either to traverse the allegations of a plea or confess and avoid them, a plea setting up that the gas company supplied gas through a prepayment meter furnished plaintiff under a contract requiring plaintiff to provide a suitable place for the meter, and to make good any money which might be lost or stolen therefrom, and that plaintiffs refused to make good a sum of money stolen from the meter, is not sufficiently traversed or confessed and avoided by replication alleging that the meter was installed in a portion of the premises occupied exclusively by another, and that it was not under the control of the plaintiff, since under the replication it may be presumed that the meter was installed in its place provided by plaintiff, and that they and not defendant allowed the meter to be in the custody and control of another, thus admitting and not avoiding the averments of the plea.

4. *Same; Contract; Validity.*—Where gas was furnished through a prepayment meter an agreement that the customer should be liable for any money lost or stolen from the meter, is not illegal.

5. *Same; Equitable Estoppel.*—Where the gas company furnished gas through a prepayment meter under a contract requiring a customer to make good any money which might be lost or wrongfully taken from the meter, the fact that the meter was located on the premises of another, did not estop the company from relying on the contract, where that fact was equally as well known to the customer.

APPEAL from Birmingham City Court.

Heard before Hon. J. H. MILLER.

Action by R. C. Pratt and another against the Birmingham Railway, Light & Power Company for failure to furnish gas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Amended count 1 is as follows: "Plaintiff claims of defendant corporation the sum of $5,000 as damages for that heretofore, to wit, on November 13, 1911, plaintiffs were engaged in the business of operating a pool room or pool table at 1812 First avenue, Birmingham, Alabama; that defendant corporation was at that time a public service corporation engaged in the business of furnishing gas, and appliances and fixtures in connection with the consumption of gas for illuminating purposes by the public of the city of Birmingham, for hire. Plaintiff avers that they contracted with defendant to furnish them gas on, to wit, the 16th day of October, 1911, for the purpose of use by the plaintiffs in the conduct of their business at the location aforesaid, for illuminating purposes, for which the plaintiff will pay and agreed to pay by depositing a 25 cent coin in a certain slot meter machine then and there furnshed by defendant, by means of which arrangement, mechanism, or contrivance a certain amount of gas was allowed to be consumed or used by plaintiffs in their said business on their said premises. And plaintiffs aver that they complied and stood ready to comply with the terms of their said agreement with the said defendant in all things, until defendant breached said contract, as hereinafter complained of. And plaintiffs aver that on, to wit, November 13, 1911, the said company breached the said contract, and refused to furnish gas to plaintiffs according to the terms of said contract with plaintiff, and, as a proximate consequence of said breach of said contract by defendants, plaintiffs were put to great inconvenence and annoyance, and caused to suffer great physical

[Birmingham Railway, Light & Power Co. v. Pratt & McCurdy.]

and mental pain, and were caused to suffer loss in their business, and were put to great expense in and about procuring and obtaining lights for their said pool hall." The demurrer was that it does not appear with sufficient certainty what the contract was, nor that the appellees performed their part of the contract, or stood ready and willing to perform the same. The substance of count 2 sufficiently appears in the opinion of the court, as does the substance of the special pleas and the replications.

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant. The court erred in overruling demurrers to the several counts of the complaint as they failed to aver with sufficient certainty that plaintiffs performed their part of the contract or stood ready and willing to perform.—*Barney C. Co. v. Davis,* 1 Ala. App. 595; *Sayre v. Wilson,* 86 Ala. 151; *Spencer v. Bessemer W. W. Co.,* 39 South. 91; 75 N. E. 2. A replication must either traverse the plea or confess and avoid.—*Owenton W. Co. v. Hall,* 149 Ala. 224. Under this authority the court was in error in overruling demurrers to the replications.—See *So. Ry. v. Hobbs,* 151 Ala. 348; *L. & N. v. Mothershed,* 110 Ala. 156; *Hudson I. & M. W. v. Bland,* 167 Ala. 397; *McNeel v. A. C. L. Ry.,* 161 Ala. 326; *H. A. & B. Ry. Co. v. South,* 112 Ala. 653.

ALLEN & BELL, for appellee. Plaintiffs' action, as declared in each count as amended, shows that a recovery is sought for a breach of duty growing out of a breach of contract, and the action is, therefore, *ex delicto.*—*Western Union Tel. Co. v. Kritchbaum,* 132 Ala. 535. The best criterion to determine whether an action is in form *ex contractu* or *ex delicto* is this: If the cause of action, as stated in the declaration, arises from a breach

of duty growing out of a contract it is *ex delicto,* but if the cause of action arises from a breach of promise, the action is *ex contractu*—2nd Mayfield's Digest, p. 37; *Wilkinson v. Mosley,* 18 Ala. 288; *Ins. Co. v. Randall,* 74 Ala. 170; *Kritchbaum v. W. U. T.,* 132 Ala. 535; *Myers v. Gilbert,* 18 Ala. 467; *Wilkerson v. Mosely,* 30 Ala. 562; *Chambers v. Seay,* 93 Ala. 372; *Chambers v. Seay,* 87 Ala. 558; 6 South. 341; *Capital City Water Co. v. City of Montgomery,* 92 Ala. 366; *Railway Co. v. Parker,* 123 Ala. 683; *Sou. Ry. Co. v. Bunnell,* 138 Ala. 254; *McGehee v. Reynolds,* 117 Ala. 413; *White v. Levy,* 91 Ala. 175. The counts of the complaint predicated upon a failure to furnish gas to the plaintiffs and upon the cutting off of gas from the premises of the plaintiffs, necessarily set out averments of the existence of a contract either express or implied, but these averments were made as mere matters of inducement from which an action in case arose for a breach of duty to furnish gas to the plaintiffs, as a public service corporaton.—Authorities supra; *Sou. Ry. Co v. Bunnell,* 138 Ala. 254; 5 Am. & Eng. Enc. of Law (2nd Ed.) 639; 11 Am. & Eng. Enc. of Law (2nd Ed.) 535; *Isley v. Brown,* 109 N. E. 555; *N. Y., etc. R. R. Co. v. Winter,* 143 U. S. 60; *McGehee v. Reynolds,* 117 Ala. 418. Where plaintiff files several replications to a plea and any one of same is good, as tested by demurrer, the overruling of said demurrer would not be reversible error, although some of the grounds of demurrer might have been well taken.—*Deposit Co. v. Mobile Co.,* 124 Ala. 144. Although a demurrer to a complaint may have been improperly overruled, yet if the demurrant was not harmed by such ruling, the judgment will not be reversed on account of the harmless error.—*State v. Brantley,* 27 Ala. 44; *Chambers Co. v. Clews,* 21 Wall (U. S.) 317; *Walter v. Florida Savings Bank,* 20 Fla. 826; 6 Enc. Pl. & Pr., 4

b. page 368.  The rulings of the court on the defendant's many grounds of demurrer predicated on the alleged insufficiency of the complainant's averments in reference to the alleged contract between the plaintiffs and the defendant were rendered innocuous and unavailing to the defendant on appeal when the defendant pleaded said contract *in haec verba* or in substance, and the plaintiffs, by their replication, confessed the plea.—*Lucas v. Ins. Co.,* 139 Ala. 489; 36 South. 40;  *Lee v. DeBardelaben,* 132 Ala. 628; 15 South. 270;  *L. & N. R. R. Co. v. Johnson,* 135 Ala. 232; 33 South. 661.  The failure to pay a disputed or controverted account does not give a public service corporation, engaged in furnishing gas, the right to cut off the customer's supply of gas in order to enforce the collection of said claim.—*Keily v. B'ham. Water Works Co.,* 56 South. 847;  *Telegraph Co. v. Hobart,* 89 Miss. 252; 42 South. 349.  A public service corporation, monopolistic in its nature, is liable in punitive damages as well as compensatory damages for oppressive methods such as attempting to collect disputed accounts by cutting off water.  They do this at their peril. —*Keily v. B'ham Water Works Co.,* 56 South. 847; *Tel. Co. v. Hobart,* 89 Miss. 252;  42 South. 349.  All contracts having for their purpose anything repugnant to justice or against the general policy of the common law or contrary to statutory provisions, are void.—*Black & Manning v. Oliver,* 1 Ala. 441;  *McGehee v. Lindsay,* 6 Ala. 16; *Carrington v. Collier,* 2 Stewart, 172.  The following recent decisions bear upon the question of the right under the doctrine of public policy, to exempt one's self from liability for negligence, and hold that such stipulation is illegal.—*Pierce v. Sou. Pac.* (Cala.) 120 Cala. 126; 1 Am. Neg. Reports, 211;  *W. U. T. Co. v. Eubank,* 11 Ky. 591; 1 Am. Neg. Rep. 244;  *McNeill v. Durham, etc. R. R. Co.,* 137 N. C. 704; 131 N. C. 683;

132 N. C. 510; 17 Am. Neg. Report, 672; *Brooks v. W. U. T. Co.,* 26 Utah 147: 14 Am. Neg. Rep. 50; *Beatty Lumber Co. v. W. U. T. Co.,* 52 W. Va. 410; 14 Am. Neg. Rep. 50; *Davis v. R. R Co* (Wis) 10 Am. Neg. Cases, 507; *R. R. Co. v. Phillipson,* 2 Am. Neg. Reports, 652.

WALKER, P. J.—The argument of the counsel for the appellant in support of their contention that the demurrers to the several counts of the complaint as it was amended should have been sustained is based upon the claim that each of the counts failed to aver or show that the plaintiffs performed their part of the contract alleged, or stood ready and willing to do so, or that they offered or were willing and ready to pay for the service of which they complained that they were deprived. The original first count did not remain subject to this criticism, as by the addition to it which was made by an amendment it was alleged that the plaintiffs "complied and stood ready to comply with the terms of their said agreement with the said defendant in all things, until the said defendant breached said contract, as herein complained of." That count, as it was amended, was not subject to the only grounds of demurrer which have been insisted on in the argument made in behalf of the appellant. We do not consider grounds of demurrer which counsel for the appellant have not undertaken to support by argument or citation of authority. It follows that the assignment of error based upon the overruling of the demurrer to the first count as it was amended cannot be sustained.

The second count averred that the defendant (appellant here) was a public service corporation engaged in the business of furnishing gas to the public for a reward, and that, while the plaintiffs were customers of the defendant, the latter wrongfully cut off the gas

from the premises of the former. This count contained no averment in reference to the plaintiffs' paying for gas furnished, or as to their being ready and willing to do so. Plainly the defendant was under no duty to continue to supply the plaintiffs with gas, unless the latter continued ready and willing to pay for it. It was incumbent upon the plaintiffs to show the existence of the duty, for a breach of which complaint was made. It was not a wrong for which the plaintiffs were entitled to complain that the defendant cut off the gas from the plaintiffs' premises and refused to furnish them gas, if they did not offer to pay for it, and were not ready and able to do so. In failing to show such offer or such willingness and ability on their part, the plaintiffs failed to show that the conduct of the defendant which was complained of was a breach of any duty owing by the defendant to them at that time.—*Barney Coal Co. v. Davis,* 1 Ala. App. 595, 55 South. 1023. The count last mentioned was subject to the demurrer interposed to it on the grounds pointing out the deficiency of its averments in this respect. There was a similar defect in each of the remaining counts upon which the case was tried. In none of them was it made to appear by appropriate averments of facts that the defendant, at the time of the acts of its employees which were complained of, was bound to continue to render the services, by the discontinuance of which it was alleged that the plaintiffs were subjected to injury.

In several special pleas, it was averred, in effect, that the acts complained of occurred in the following circumstances: The defendant supplied gas to the plaintiffs on their premises mentioned in the complaint through a prepayment meter (having a slot device in which coin was deposited to obtain the quantity of gas the coin would pay for), furnished to them on said

premises under a contract which provided that "the con-
sumer hereby agrees that in case the said meter, or the
money, or any part thereof, deposited therein shall be
lost or stolen, or shall be removed by any person other
than the agents of said company, the consumer shall
pay the company on demand the amount of money so
lost, stolen or removed." At the time of the occurrence
mentioned in the complaint, the plaintiffs were using
said meter by virtue of said contract, and said meter
had been broken open, not by the servants of the defend-
ant, and the amount which had been deposited therein
had been taken out. The defendant had made demand
upon the plaintiffs for the amount of money which had
been so taken out of the meter, and the plaintiffs had
failed and refused to pay the same or for the gas which
had been consumed, which was shown by the meter, and
thereafter the defendant removed said meter from the
plaintiffs' premises, and discontinued the service for
which they had contracted. The writings evidencing
the contract between the parties were made exhibits to
two of the special pleas. It was provided in the con-
tract that "the consumer will provide suitable space for
the meter." By these pleas the defendant set up as an
excuse for its discontinuance of the service the failure
and refusal of the plaintiffs, after due demand upon
them, to make good to the defendant the loss from the
designated place of deposit on the plaintiffs' premises
of the price of gas supplied to them. The demurrers to
these special pleas having been overruled, the plaintiffs
interposed special replications thereto; the first of
which averred, in effect, that the meter was installed and
located by the defendant in a portion of the premises
which was occupied exclusively by one Kohn, and that
it was not in the custody or under the control of the
plaintiffs. The action of the court in overruling the de-

murrer to this replication is assigned as error. The counsel for the appellees suggest that, if there was error in that ruling, it was error·without injury, because the demurrers to the special pleas replied to were well taken, and were improperly overruled.

The last-mentioned contention is sought to be supported on the ground of the invalidity of the contract under which the plaintiffs were furnished gas by the defendant. We are aware of no rule of law which would render invalid and unenforceable an undertaking of a consumer of gas, supplied in the way above mentioned, to be responsible for the loss or theft of the money deposited in payment of it, while that money is in the agreed receptacle for it on his own premises. By such an undertaking he merely insures the safety from violence or theft of the money deposited·for gas as desired before it gets.into the possession or under the control of the party entitled to it, and while it is in the agreed place of deposit on the premises served through the meter of which the consumer makes use. The law does not forbid the assumption of such a risk by a consumer of gas who contracts for such a method of service. It is not made to appear that the plaintiffs desired or consented to be supplied with gas in any way except through the prepayment meter for the use of which they contracted. In the argument of the counsel for the appellees, a spirited attack is made upon other provisions of the contract of which the above-quoted stipulation is a part. It is enough to say of such other provisions that none of them were sought to be enforced in this suit, and questions as to their legal validity are not presented for decision.

The above-described special replication not averring to the contrary, it may be presumed that the meter was located and installed on the plaintiffs' premises in the

space they provided for it, as stipulated in the contract; that with their consent and approval, and without the knowledge of the defendant, that part of their premises was in the exclusive occupancy of one Kohn; and that they, and not the defendant, permitted the meter to be in the custody or under the control of some one other than themselves. Certainly the plaintiffs were not discharged from the obligation of the above-quoted provision of their contract by a state of facts brought about by their own procurement, and for which the defendant was in no way responsible. For a replication to be sufficient, it must either traverse the allegations of the plea or pleas to which it refers, or confess those allegations and avoid the effect sought by the opposing party to be attributed to the facts pleaded, or set up some matter of estoppel whereby the defendant is precluded from relying on the grounds of defense sought to be availed of.—*Huson Ice & Machine Works, v. Bland & Chambers,* 167 Ala. 391, 52 South. 445; *McNeill v. Atlantic Coast Line Ry. Co.,* 161 Ala. 319, 49 South. 797. The replication under consideration does not deny any material averment of the pleas. It impliedly admits the truth of these averments. and, by averring a state of facts, the existence of which, the contrary not appearing, it may be inferred was brought about by the plaintiffs themselves, or was acquiesced in by them, it does not show that they were entitled to avoid their obligation, shown by the averments of the pleas, to pay for the service desired in the manner provided in their contract for it.

Nor did that replication show that the defendant had estopped itself to claim the benefit of the contract under which it had supplied gas for the use of the plaintiffs on their premises mentioned in the complaint. The plaintiffs could not sustain a claim that the defendant

[Birmingham Railway, Light & Power Co. v. Pratt & McCurdy.]

was estopped by a state of facts as well known to themselves, when they deposited the money which was subsequently stolen, as to the defendant, and the responsibility for the existence of which was not shown to have been upon the defendant more than upon the plaintiffs themselves. The demurrer to the replication in question pointed out matrial defects in it, and that demurrer should have been sustained.

The special replication next in order is subject to similar criticism. While its averments show that the defendant, with knowledge that the part of the plaintiffs' premises in which the meter was located was subrented by them to one Kohn, and was under his exclusive control, allowed the meter to remain in that part of the premises until the money which had been deposited was stolen from it, they do not negative the conclusion that the plaintiffs subrented that part of their premises after the meter was installed in the space furnished by them for it, and that they consented to and approved the conduct of the defendant in permitting it to remain there, and continued to make use of it while it was there. What has just been said is equally applicable to the remaining special replication. We are of opinion that the demurrers to each of the three special replications mentioned should have been sustained.

Reversed and remanded.